## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT


STATE FARM FIRE & CASUALTY CO.    :
    Plaintiff,      :     CIVIL ACTION NO.
           :     3:12-cv-01675(VLB)
  v.            :
           :
GREGORY MESNIAEFF and     :     March 21, 2014
ELIZABETH BURKE       :
    Defendants.     :


## MEMORANDUM OF DECISION GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. 27]


### I.    Introduction

The Plaintiff, State Farm Fire Casualty Company ("State Farm"), brings this declaratory judgment action against Defendants, Gregory Mesniaeff ("Mesniaeff") and Elizabeth Burke ("Burke"), seeking to avoid defending and indemnifying Mesniaeff in an underlying civil action proceeding in Connecticut State Court. The Plaintiff has moved for summary judgment pursuant to Fed. R. Civ. P. 56, asserting that there are no issues of material fact in dispute and that the claims can be decided as a matter of law.  For the following reasons, the Plaintiff's motion for summary judgment is GRANTED.

### II.    Background

On December 2, 2011, Burke filed suit against Mesniaeff in the Connecticut Superior Court, Judicial District of Litchfield, captioned *Elizabeth Burke v.*

1

*Gregory Mesniaeff*, CV12-6005879.  [Dkt. 29, Plaintiff's Local Rule 56(a)1 Statement in Support of Its Motion for Summary Judgment, ¶ 1; Dkt. 34, Defendant Burke's Local Rule 56(a)(2) Statement in Opposition to Summary Judgment, ¶ 1; Dkt. 40, Defendant Mesniaeff's Local Rule 56(a)(2) Statement in Opposition to Plaintiff's Motion for Summary Judgment, ¶ 1].  Burke amended her complaint on January 8, 2013, and the case was subsequently transferred to the Judicial District of Stamford/Norwalk at Stamford.  [Dkt. 29, ¶ 1; Dkt. 34, ¶ 1; Dkt. 40, ¶ 1].  Another amended complaint in that matter was filed on November 27, 2013 (hereinafter the "Burke Complaint").  [Dkt. 43, Burke Complaint].  Even though the pleading stage of the litigation has allegedly not yet closed, notwithstanding that the proceeding has been pending for more than two years, the Burke Complaint, the operative complaint for our purposes, alleges that on December 5, 2009, Mesniaeff assaulted Burke while she was at his home at 129 North Main Street, Sharon, Connecticut.  [Dkt. 43, Count 1, ¶¶ 3-4].  Count one of the Burke Complaint alleges that Mesniaeff committed an intentional assault against Burke.  Specifically, it is alleged that on December 5, 2009, Mesniaeff, the insured, "willfully and maliciously grabbed and repeatedly pulled [Burke's] arms, knocked her down multiple times on the driveway and grabbed and pulled her neck as he dragged her away from the [insured] premises."  [*Id.* at Count 1, ¶ 4].  It also alleges that Mesniaeff "lifted [Burke] from the ground by her neck and by her arm held behind her back."  [*Id.*].

2

The second count is for wanton/reckless assault, and it alleges that Mesniaeff "wantonly and recklessly grabbed and repeatedly pulled [Burke's] arms, knocked her down multiple times on the driveway and grabbed and pulled her neck as he dragged her away from the premises." [*Id.* at Count 2, ¶ 4]. Count two further alleges that Mesniaeff lifted Burke by her neck and by her arm held behind her back. [*Id.*].

Count three is for negligent assault, and it alleges that Mesniaeff

> attempted, perhaps without initially intending to injure the plaintiff, to remove her from the premises, possibly in order to avoid a public confrontation in front of guests who were at the premises at the time. In so doing, he negligently and carelessly grabbed the plaintiff by the arm and, without her consent, propelled her forcefully down the driveway toward the public sidewalk adjacent to the premises, during which time she fell to the ground at least once. At one point during this assault, the defendant lifted the plaintiff from the ground by her neck and by her arm behind her back.

[*Id.*]. The earlier complaint dated January 8, 2013, however, only alleged with respect to this count that Mesniaeff "negligently and carelessly grabbed and repeatedly pulled the plaintiff's arms, knocked her down multiple times on the driveway and grabbed and pulled her neck as he dragged her away from the premises. During this attack, the defendant lifted the plaintiff from the ground by her neck and by her arm held behind her back." [Dkt. 29-1, Burke Complaint dated January 8, 2013, Count 3, ¶ 4]. It is not clear whether the impetus for the added detail in the Burke Complaint as amended was a result of the present declaratory judgment action.

3

Count four is for intentional infliction of emotional distress, and it repeats the allegations found in count one and further alleges that Mesniaeff's conduct was performed with the "intention of inflicting emotional distress upon the plaintiff, or with the knowledge that emotional distress was a likely and foreseeable result of his conduct." [Dkt. 43, Count 4, ¶ 5]. The fifth count is for negligent infliction of emotional distress, and it alleges that Mesniaeff "grabbed and repeatedly pulled the Plaintiff's arms, knocked her down multiple times on the driveway and grabbed and pulled her neck as he dragged her away from the premises. During this attack, the defendant lifted the plaintiff from the ground by her neck and by her arm held behind her back." [*Id.* at Count 5, ¶ 4]. Count five also alleges that Mesniaeff's conduct "created an unreasonable risk of causing emotional distress to the plaintiff." [*Id.* at Count 5, ¶ 5].

Count six is for reckless infliction of emotional distress, and it incorporates the allegations in count two and alleges that Mesniaeff's actions "created an unreasonable risk of causing emotional distress to the plaintiff." [*Id.* at Count 6, ¶ 5]. Count seven is for continuing tort of physical and psychological abuse, and it repeats the allegations of the assault in count one, and further alleges that this conduct "was part of an ongoing pattern of recurring domestic violence perpetrated by the defendant upon the plaintiff which included prior assaults pre-dating this incident." [*Id.* at Count 7, ¶ 5]. Specifically, it alleges that "[t]his ongoing pattern of recurring domestic violence involved physical and/or psychological abuse perpetrated by the defendant upon the plaintiff over an

4

extended period of time" and that "the plaintiff was battered, physically and/or psychologically abused [sic] by the defendant at least twice."  [*Id.* at Count 7, ¶¶ 7, 10].

As a result of the assault and ongoing pattern of abuse, Burke claims to have sustained bodily injury, including multiple bodily contusions, left shoulder pain, a left shoulder tear of the supraspinatus tendon, a left shoulder tear of superior labrum, severe posttraumatic rapidly progressive osteoarthritis of the left shoulder and synovitis, left shoulder adhesive capsulitis, neck pain, low back pain, lumbar disc displacement, post-traumatic stress disorder, depression, anxiety, and severe physical, mental and emotional distress.  [*Id.* at Count 1, ¶5, Count 7, ¶ 12].

Prior to December 5, 2009, State Farm issued to Mesniaeff a Homeowners Policy of insurance bearing policy number 07-BC6164-0 (the "Policy") with effective dates of coverage from July 1, 2009 to July 1, 2010.  [Dkt. 29, ¶ 14; Dkt. 34, ¶ 14; Dkt. 40, ¶ 14].  The Policy lists Mesniaeff as the named insured and the insured premises as 129 North Main Street, Sharon, Connecticut.  [Dkt. 29, ¶ 15; Dkt. 34, ¶ 15; Dkt. 40, ¶ 15].  The Policy, including all relevant amendments, provides in relevant part:

### DEFINITIONS

"You and your" mean the "name insured" shown in the Declarations. Your spouse is included if a resident of your household.  "We", "us" and "our" mean the Company shown in the Declarations.

5

1. "bodily injury" means physical injury, sickness, or disease to a person.  This includes required care, loss of services and death resulting therefrom. . . .

* * * *

4. "insured" means you and, if residents of your household:

    a.   your relatives; and

    b.   any other person under the age of 21 who is in the care of a person described above.

* * * *

7. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions which results in:

    a.   bodily injury; or

    b.   property damages;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1. Pay up to our limit of liability for the damages for which the insured is legally liable; and

2. Provide a defense at our expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate.  Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or

6

> satisfy a judgment resulting from the occurrence, equals our limit of liability.

* * * *

### <u>SECTION II - EXCLUSIONS</u>

1. **Coverage L and Coverage M do not apply to:**

    a. bodily injury or property damage which is either expected or intended by an insured.

* * * *

[Dkt. 29, ¶ 16; Dkt. 34, ¶ 16; Dkt. 40, ¶ 16].  On November 27, 2012, State Farm filed the instant declaratory judgment action against the insured, Mesniaeff, and Burke, seeking a declaration that it does not have a duty to defend or indemnify Mesniaeff under the Policy for the claims asserted against him in the underlying civil action.  [Dkt. 29, ¶ 17; Dkt. 34, ¶ 17; Dkt. 40, ¶ 17].  Specifically, State Farm alleges that the Policy does not afford coverage for the December 5, 2009 "attack," as described in the Burke Complaint because the "bodily injury" sustained by Burke was not caused by an "accident" as that term is defined under Connecticut law and mandated by the Policy definitions.  [Dkt. 29, ¶ 18; Dkt. 34, ¶ 18; Dkt. 40, ¶ 18].  State Farm also alleges that coverage for the incident in the Burke Complaint is excluded pursuant to the Policy's expected or intended acts exclusion.  [Dkt. 29, ¶ 19; Dkt. 34, ¶ 19; Dkt. 40, ¶ 19].  Notwithstanding its position that no coverage exists under the Policy for the claims asserted against Mesniaeff in the state court action, State Farm is providing a defense to Mesniaeff under a full reservation of rights.  [Dkt. 29, ¶ 20; Dkt. 34, ¶ 20; Dkt. 40, ¶ 20].

Both Defendants, however, argue that there are questions of material fact as to whether Mesniaeff intended to harm Burke in the altercation and, therefore, whether his actions were merely reckless or negligent, rather than intentional. [Dkt. 34-II, Disputed Issues of Material Fact, ¶¶ 1-5; Dkt. 40-IV, Disputed Issues of Material Fact, ¶¶ 1-7].  In support of these claims, the Defendants cite to Mesniaeff's deposition testimony in which he admitted to "escorting " Burke off the property, but that he had never intended the resulting harm.  [Dkt. 40-IV, ¶¶ 3-4].  Other witnesses also testified that when Mesniaeff was escorting Burke off the property, it looked as though their arms were linked and "they were walking together."  [Dkt. 40-IV, ¶ 6].  Accordingly, they assert that summary judgment should be denied.

III.    Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the

8

record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315-16 (2d Cir. 2006) (citations and internal quotation marks omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch–Rubin v. Sandals Corp.,* No. 3:03cv481(MRK), 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (citations and internal quotation marks omitted); *Martinez v. Connecticut*, No. 3:09cv1341(VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *Fincher v. Depository Trust and Clearance Co*., 604 F.3d 712, 720 (2d Cir. 2010).

### A.  Insurance Contract Interpretation

To rule on the issues presented in the Plaintiff's motion for summary judgment, the Court will need to interpret various contractual terms in the Policy.

9

The parties appear to agree that Connecticut law governs the Policy, so this Court will apply Connecticut law without addressing the issue.

"Insurance policy words must be accorded their ordinary and natural meaning, and any ambiguity in the terms of the policy must be construed in favor of the insured." *Elec. Ins. Castrovinci*, No. 3:02cv1706(WWE), 2003 WL 23109149, at *3 (D. Conn. Dec. 10, 2003) (citing *Hansen v. Ohio Cas. Ins. Co.*, 239 Conn. 537, 542 (1996)).

> An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . . In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provision of the policy . . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning.

*New London Cnty. Mut. Ins. Co. v. Bialobrodec*, 48 A.3d 742, 746 (Conn. App. 2012) (quoting *Lancia v. State Nat'l Ins. Co.*, 41 A.3d 308, 312, *cert. denied*, 305 Conn. 904, 44 A.3d 181 (2012)).  Furthermore, "[t]he question of whether an insurer has a duty to defend its insured is purely a question of law. . . . In construing the duty to defend as expressed in an insurance policy, [t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage." *Id.* (citations and internal quotation marks omitted).  Accordingly, "it necessarily follows that the insurer's duty to defend is measured by the allegations of the

10

complaint." *Id.* (citations and internal quotation marks omitted); *see also Truck Ins. Exch. v. Mager*, No. 3:06cv1058(WWE), 2007 WL 3119531, at *2 (D. Conn. Oct. 22, 2007) ("The facts alleged in the underlying complaint determine whether an insurer is obligated to defend or indemnify." (citing *Flint v. Universal Mach. Co.*, 238 Conn. 637, 646, 679 A.2d 929 (1996)).

"[T]o prevail on its own motion for summary judgment for a declaratory judgment that it has no duty to defend in the underlying action, the insurer must establish that there is no genuine issue of material fact either that no allegation of the underlying complaint falls even possibly within the scope of the insuring agreement or, even if it might, that any claim based on such an allegation is excluded from coverage under an applicable policy exclusion." *New London Cnty. Mut. Ins. Co.*, 48 A.3d at 745-46 (citations and internal quotation marks omitted). Moreover, "[i]n contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." *DaCruz v. State Farm Fire and Cas. Co.*, 846 A.2d 849, 858 (Conn. 2004) (citations and internal quotation marks omitted). "Thus, the duty to defend is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage, whereas the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct *actually* was covered by the policy." *Id.* (italics in the original) (citations and internal quotation marks omitted). Importantly,

11

"[b]ecause the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify."  *Id.* (citations and internal quotation marks omitted).

The Plaintiff makes two arguments in support of its motion: first, it claims that the alleged assault at issue in the civil case is not an "occurrence" as defined in the Policy and, therefore, not covered by the Policy; and second, it argues that even if the assault in the civil case was an occurrence, it was excluded from coverage because it falls within the exclusion for intended or expected actions.

1.  **Whether the Alleged Assault was an Occurrence as Defined in the Policy**

The Policy provides coverage for "bodily injury or property damage . . . caused by an occurrence . . . ."  It further defines an "occurrence" as "an accident, including exposure to conditions, which results in . . . bodily injury; or . . . property damage . . . during the policy period, repeated or continuous exposure to the same general conditions is considered to be one occurrence."  Therefore, to be covered, bodily injury must be caused by an occurrence.  The Plaintiff argues that the facts in the Burke Complaint allege intentional conduct, which, by definition, is not an occurrence because it is not accidental and, therefore, is not covered by the Policy.  [Dkt. 28, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, p. 12-15].

Since an occurrence is defined as an "accident" it necessarily means that to be an "occurrence," the actions causing the ultimate injury cannot be intentional.

**12**

Even when the term "accident" is not defined in the policy, as is the case here, courts have held that "[w]here the terms of the policy provide that coverage is triggered by an 'occurrence' that is defined as an 'accident,' coverage does not extend to an insured's intentional torts." *Truck Ins. Exch. v. Cherie Spada, Alison Yering*, No. 3:06CV1060(AVC), 2007 WL 2071629, at *3 (D. Conn. July 16, 2007); *see also Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 459 (D. Conn. 2010) ("The true basis for the action is Mara's many intentional acts of intimidation and harassment.  These acts were not by any means accidental, i.e., 'occurrences' as defined in the policy.").  The Supreme Court has also held that the "term 'accident' is to be construed in its ordinary meaning of an 'unexpected happening.'" *Commercial Contractors Corp. v. Am. Ins. Co.*, 202 A.2d 498, 504 (Conn. 1964).  The Court in *Atlantic Mut. v. Pope*, adopted the "unexpected happening" definition of "accident" and precluded the alleged beating and whipping of a minor from being considered an "occurrence."  *Atlantic Mut. v. Pope*, No. CV990497354S, 2001 WL 861829, at *6 (Conn. Sup. Ct. June 28, 2001).  That court also found that "the mention of 'intent' in the case law definition of 'accident' as 'a sudden event or change occurring *without intent or volition* through carelessness, an unfortunate result' . . . goes more to the lack of deliberateness or negligent conduct of the act itself, not the intent of the acting party to achieve a certain end result."  *Id.*  (citations omitted, emphasis in the original).  Therefore, "occurrence" as defined in the Policy does not include intentional torts or other intended actions, and the intent required is the intent to commit the specific act leading to the injury, not the intent to achieve a specific

13

result.  *See also Allstate Ins. Co. v. Burnard*, No. 3:08cv603(VLB), 2010 WL

133202, at *7 (D. Conn. March 31, 2010) ("Whether alleged conduct is accidental,

and therefore an occurrence, depends however on whether the event causing the

injury was accidental, as opposed to whether the resulting damages were

unintended." (citing *Providence Wash. Ins. Group v. Albarello*, 784 F. Supp. 950,

953 (D. Conn. 1992)).

   In *Allstate Ins. Co. v. Campagna*, this Court held that a nearly identically

worded policy did not require the insurance company to defend the insured in an

underlying action alleging negligence, negligent infliction of emotional distress,

battery, and intentional infliction of emotional distress stemming from a physical

altercation initiated by the insured.  *Allstate Ins. Co. v. Campagna*, No.

3:07cv00098(VLB), 2008 WL 4000564, at *1 (D. Conn. Aug. 27, 2008).  Even though

the plaintiff in the underlying civil matter alleged negligent as well as intentional

causes of action, the Court noted that "[t]he same conduct [cannot] reasonably

be determined to have been both intentionally and negligently tortious . . . .

[I]ntentional conduct and negligent conduct, although differing only by a matter

of degree . . . are separate and mutually exclusive."  *Id.* at *3 (quoting *DaCruz*, 846

A.2d at 861).  The Court held that there were no facts alleged in the complaint that

showed that the insured's conduct was negligent; instead, the beating, which was

alleged to have been done "intentionally, willfully, wantonly and maliciously,"

was purposefully done, and merely invoking the label "negligence" in a complaint

is insufficient to render the conduct at issue unintentional.  *Id.*

**14**

Similarly, in *Middlesex Ins. Co. v. Mara*, the court held that the insurance company had no duty to defend the insured in an underlying civil action in which the insured was alleged to have engaged in a series of intimidating and harassing behaviors resulting in both intentional-based claims, such as intimidation and invasion of privacy, and negligent-based claims, such as negligent infliction of emotional distress, because the policy excluded coverage for intentional conduct. *Middlesex Ins. Co.*, 699 F. Supp. 2d at 442. The court explained that each count in the complaint was based on the insured's "intentional actions, falling outside the coverage of" the policy. *Id.* at 453. "Moreover, the Ninth Count, although captioned as 'negligent infliction of emotional distress,' is actually based on a series of intentional, patently harmful acts" set forth elsewhere in the complaint. *Id.* Accordingly, the complaint only alleged intentional conduct; conduct that was not protected by the policy. *Id.; see also United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993) (affirming summary judgment for an insurance company in a declaratory judgment action because a claim for battery in New York could not be turned into a claim for negligence); *Truck Ins. Exch.*, 2007 3119531, at *1 (finding that the complaint alleged intentional conduct not negligent conduct when it was claimed that the insured physically assaulted the plaintiff in the underlying civil action, restrained her in her bedroom and threatened to kill her by holding a gun to hear head).

Here, the Burke Complaint alleges that Mesniaeff "willfully and maliciously grabbed and repeatedly pulled the Plaintiff's arms, knocked her down multiple

**15**

times on the driveway and grabbed and pulled her neck as he dragged her away from the premises.  During the attack, the Defendant lifted the Plaintiff from the ground by her neck and by her arm held behind her back." [Dkt. 43, Burke Complaint, ¶ 4].  Furthermore, the Burke Complaint alleges that this assault was "part of an ongoing pattern of recurring domestic violence perpetrated by the defendant upon the plaintiff which included prior assaults pre-dating this incident." [*Id.* at Count 7, ¶ 5].  Burke claims that she was "battered, physically and/or psychologically abused by the defendant at least twice," and due to all of the aforementioned, she was physical and emotionally injured.  [*Id.* at Count 7, ¶¶ 10, 12].  Even though in count three for negligent assault Burke alleges speculatively that "defendant attempted, perhaps without initially intending to injure the plaintiff, to remove her from the premises, possibly in order to avoid a public confrontation in front of guests who were at the premises at the time," it is clear that Mesniaeff's persistent efforts to forcibly remove Burke from the premises and his inattention to the possibility that she was being injured was intentional, even if the result, her extensive injuries, was not.  [*Id.* at Count 3, ¶ 4]. Just as in *Mara* and *Campagna*, the "event causing the injury," here the escort that resulted in the assault, was not accidental.  *See Burnard*, 2010 WL 133202, at *7 ("Whether alleged conduct is accidental, and therefore an occurrence, depends however on whether the event causing the injury was accidental, as opposed to whether the resulting damages were unintended.").

16

Mesniaeff argues that even though the Burke Complaint alleges intentional conduct, he denies those allegations.  However, as Mesniaeff correctly points out, "'[a]n insurer's duty to defend is derived from the allegations of the complaint and the terms of the policy.'"  [Dkt. 41, Mesniaeff's Memorandum in Opposition Motion for Summary Judgment, p. 8 (quoting *Technicon Elec. Corp. v. Am. Home Assurance Co.*, 74 N.Y.2d 66 (1989)].  Therefore, the "question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy."  *Wetland v. Am. Equity Ins. Co.*, 840 A.2d 1158 n.7 (Conn. 2004).  Since Mesniaeff's claimed defenses are not contained in the Burke Complaint, they are irrelevant to the analysis required to be conducted by this Court.

Even though a court need not look beyond the allegations in the Burke Complaint, other evidence confirms this Court's understanding of the civil action. Mesniaeff admitted in his deposition that "[t]owards the end of the driveway as I was walking her, I think she started resisting me more and more.  And at that point it became a, you know, it was . . . a little bit of a struggle."  [Dkt. 35, Exhibit B, Deposition of Mesniaeff dated June 6, 2013, 49:5-10].  Before that, Mesniaeff was asked if Burke "willingly depart[ed] from the premises under your escort or did she resist?"  He responded that "[a]t first she departed willfully, but then she started resisting," and that it was fair to characterize his actions as "using at least some pressure on her arm to get her moving in the right direction."  [*Id.* at

17

38:20-39:22].  Even after Burke began forcefully resisting being "escorted" off the premises, and Mesniaeff understood "that she was no longer willing to do what [he] wanted her to do," he "continued to . . . move her anyway."  [*Id.* 55:3-11].  In conclusion, Mesniaeff admitted that he "forcibly led her away from the house against her will and despite her act of resistance to it."  [*Id.* at 57:11-18].  Even though he might not have intended the end result, her severe injuries, these admissions in light of the claims in the Burke Complaint clearly show that the factual allegations underlying the complaint were based on intentional, not accidental, conduct.

Both Defendants also argue that the Burke Complaint alleges claims for assault, which in Connecticut can be committed either intentionally or negligently.  [Dkt. 41, p. 10-11; Dkt. 33, Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, p. 11-13].  The Burke Complaint alleges that Mesniaeff's actions were done willfully and intentionally, except from the third count, which alleges that he "negligently and carelessly grabbed the plaintiff by the arm and, without her consent, propelled her forcefully down the driveway toward the public sidewalk adjacent to the premises, during which time she fell to the ground at least once."  [Dkt. 43, Count 3, ¶ 4].  The Supreme Court has held that in Connecticut, "[w]ilful [sic] misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful [sic] misconduct."  *Dubay v. Irish*, 542 A.2d 711 n.8 (Conn. 1988) (citations and internal quotation marks omitted).  It also noted that

**18**

> recklessness is a state of consciousness with reference to the consequences of one's acts . . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct.  But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them.

*Frillici v. Town of Westport*, 264 Conn. 266, 277 (Conn. 2003) (citations and internal quotation marks omitted).  Reading these definitions in conjunction with the allegations in the Burke Complaint, it is clear that there is no factual predicate for the assault being one arising in negligence.  Mesniaeff did not merely fail to exercise a degree of watchfulness to avoid danger; he confronted Burke and forcefully led her down the driveway against her will.  When she began resisting, his force increased resulting in an admitted "struggle" between the Defendants.  Even if her injuries resulted from unrelated, preexisting conditions, Mesniaeff admitted to knowing that Burke had "numerous problems with her health," including a "shoulder" injury and systemic lupus.  [Dkt. 35, 62:1-64:1].  Therefore, he should have been extra cautious in removing her from the premises.  These allegations and admissions do not constitute negligence as defined by the Supreme Court, at best, they result in reckless behavior which, again by definition, is not negligent or accidental, and, therefore, is excluded from the Policy.  Accordingly, in this case, Burke is alleging an intentional or willful assault, not a negligent one.  *Markey v. Santangelo*, 485 A.2d 1305, 1307 (Conn. 1985).

19

Mesniaeff also argues that even if several of the counts in the Burke Complaint are excluded from the Policy as being based on intentional conduct, the Burke Complaint's inclusion of allegations based on negligent conduct triggers the Policy's coverage.  However, as discussed above, "merely describing an action in terms of 'negligence' is of no consequence when the action itself 'can only be deemed intentional.'"  *Middlesex Ins. Co.*, 699 F. Supp. 2d at 457 (quoting *Middlesex Mut. Assur. Co. v. Rand*, No. CV9576644, 1996 WL 218698, at *2 (Conn. Sup. Ct. April 4, 1996)).  "In other words, '[a] plaintiff by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark.'"  *Id.*  Therefore, since the factual allegations underlying the civil complaint are ones of intentional conduct, the Plaintiff has no duty to defend Mesniaeff in this action.  Even in the third count of the Burke Complaint, the allegations show that even though Mesniaeff might not have "intend[ed] to injure" Burke, he clearly intended to physically remove her from the premises and to apply increasingly greater force necessary to overcome her  resistance.  The persistent escalating use of force to overcome the will of another does not constitute negligent conduct, but rather reckless, wanton, or intentional conduct. There is only one plausible interpretation of the facts alleged by the Burke Complaint and that is that Mesniaeff's actions were intentional.

Finally, Mesniaeff argues that the pleading phase is still open in the underlying civil case, so any declaratory judgment action should be stayed until after that phase closes.  The Court wishes to highlight that the Burke Complaint was filed

**20**

on December 2, 2011, and an amended complaint was filed in that action on November 27, 2013.  Even though the pleading phase has been open for over two years, there has been no indication by either Defendant that Burke will amend her complaint again.  Furthermore, Mesniaeff cites no authority for his position that a declaratory judgment action must be stayed until the pleading phase of the underlying tort action closes.  Just as an insurance company cannot withhold a defense on the basis that the pleadings are not closed and the plaintiff may alter its allegations, an insured cannot likewise rely on the possibility that a plaintiff may amend its pleadings to bring it within the scope of coverage to further delay a declaratory judgment action.  Moreover, the Plaintiff's allegations in the Burke Complaint as amended are consistent with the factual predicate underlying the initial complaint; the only change this Court notes is the language in count three for negligent assault, which may have been altered in hopes of precluding a ruling in favor of the Plaintiff here.  Even so, this Court has already held that the factual allegations in the Burke Complaint, which the Court must review and compare to the terms of the Policy, are sufficient to show the underlying actions as being intentional.  Therefore, since there is no indication that Burke intends to amend her complaint again, and given that the proceeding has been pending for more than two years, this Court finds it appropriate to rule in favor of the Plaintiff at this time.

Since the Court has ruled that Mesniaeff's actions did not constitute an occurrence, and, therefore, that the Plaintiff does not have a duty to defend, the

21

Court will not address whether Mesniaeff's actions constituted conduct that is excluded from the Policy as consisting of "bodily injury or property damage which is expected or intended by the insured." However, the Court notes that the Plaintiff's characterization that this language excludes all intentional conduct by an insured may be overly broad because the exclusion is limited to the type of injury or property damage that results.

### 2. Duty to Indemnify

It is undisputed that "an insurer's duty to defend is broader than its duty to indemnify." *Schilberg Integrated Metals Corp. v. Cont'l Cas. Co.*, 819 A.2d 773, 783 (Conn. 2003); *see also Bd. of Educ. of City of Bridgeport v. St. Paul Fire and Marine Ins. Co.*, 801 A.2d 752, 759 (Conn. 2002) ("In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." (citations and internal quotation marks omitted)). Accordingly, "where there is no duty to defend, there is no duty to indemnify." *DaCruz*, 846 A.2d at 858 (quoting *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 382 (2001)); *see also Cambridge Mut. Fire Ins. Co. v. Sakon*, 132 Conn. App. 370, 375-76 (Conn. App. 2011) (the same).

In disputing this rule, Mesniaeff relies on *Amica Mut. Ins. Co. v. Cody*, which held that a declaratory judgment motion regarding indemnification was not ripe for decision because the underlying tort lawsuit had not been resolved. *Amica*

22

*Mut. Ins. Co. v. Cody*, No. FSTCV106005266S, 2013 WL 3770672, at * 4-10 (Conn.

Sup. Ct. June 28, 2013).  However, in that case, the insurance company was

explicitly not contesting its duty to defend; it was only contesting its duty to

indemnify.  *Id.*  Therefore, in that case the duty to indemnify could only be

decided by reviewing "the facts established at trial and the theory under which

judgment is actually entered . . . ."  *Bd. of Educ. of City of Bridgeport*, 801 A.2d at

759.  Obviously this case is of little relevance here because the Plaintiff is

contesting its duty to defend.  The Court has already decided that based on the

allegations in the Burke Complaint there is no duty to defend because no

allegations can be potentially describing behavior that would be covered by the

Policy.  Mesniaeff cites no authority explaining why the rule that no duty to

defend necessarily precludes a duty to indemnify should be reconsidered here,

and, accordingly, this Court declines to do so.  Since the Plaintiff has no duty to

defend Mesniaeff in the underlying tort action based on the Burke Complaint, it

also has no duty to indemnify.

   While the court recognizes that a trial has not occurred so there can be no

absolute assurance that a verdict will ultimately be rendered in favor of Burke on

a negligence claim, the Court is constrained by the record before it now, which

ineluctably leads to the conclusion that the acts complained of were intentional.

Therefore this Court can perceive of no set of facts in which a negligence verdict

could be rendered, absent contrivance to bring the dispute within the ambit of the

Policy.  While this could conceivably result in inconsistent outcomes, as stated

**23**

above, Burke has failed to conform the Burke Complaint to the policy despite having had ample time and knowledge of the need to do so, rendering *de minimis* the potential of inconsistent outcomes.

### IV.    Conclusion

For the foregoing reasons, Plaintiff's [Dkt. 27] Motion for Summary Judgment is GRANTED.   The Clerk is directed to close the case.


IT IS SO ORDERED.

                                    _____/s/_____
                                    Hon. Vanessa L. Bryant
                                    United States District Judge


Dated at Hartford, Connecticut: March 21, 2014

24